## THOMAS SIMMONS *vs.* WALTER CORNELL.

An acceptance of a highway dedicated to the public may be made at any time, provided the gift continues and the tender is not withdrawn by the owner of the fee before an actual acceptance.

It is not essential to a valid acceptance by *user*, that the entire width of the way dedicated should be travelled. The fact that there is a travelled path through such way shows an intention of the public to accept the whole way.

*Semble.* That the records of the proprietors are conclusive evidence of the laying out of highways therein recorded.

The statute in relation to the laying out of highways, passed May, 1715, and amended in 1767, providing that " all highways duly laid out and recorded in the records of the proprietors, shall be as good, binding and valid, as though laid out in any other manner whatever," had a retroactive effect, and highways so laid out, prior to its passage, were adopted by it as public highways.

Where a portion of a highway, which was travelled by the public, was enclosed and occupied as private property for more than twenty years ; *held,* that the statute of limitations does not run against the State, and though, if an adverse claim could have had a legal commencement juries are directed to presume that it had, yet, as this enclosure began as a common and public nuisance for which one cannot prescribe, no adverse possession, however long, would give title to individuals against the public.

THE case is fully stated in the opinion of the Court by BRAYTON J.

This was an action of trespass for breaking and entering the close of the plaintiff and throwing down his fences and subverting his soil.

The defence set up by the defendant was, that the *locus in quo*, was part of a public highway in the town of Tiverton, that the defendant was surveyor of high-

ways of said town, and as such, entered upon the premises for the purpose of amending and repairing the said way and rendering it more convenient for the public use.

The cause was tried before the jury at the August term of the Court, 1848, at Newport, and upon the trial the defendant, for the purpose of sustaining his justification, put in evidence of his appointment as such surveyor by the town of Tiverton, and for the purpose of proving the existence of the highway, put in the records of the proprietors of Pocasset purchase in Tiverton, from which it appeared that in 1699 the proprietors of Pocasset appointed a committee to lay out the lands of the propriety into lots and farm lands and to lay out suitable highways ; that the committee on the 16th of April 1700, made their report of the division of the lands among the proprietors, and of the laying of such highways as they deemed necessary, proper and convenient, and among others, the highway in question, which was eight rods in width ; that this report was on the same day received, adopted, and recorded in their records, and the defendant relied upon this record as sufficient evidence of a highway.

The plaintiff also put in evidence for the purpose of showing, that the *locus in quo*, was not within the lines of the highway, as it purported to be laid out by the committee of the proprietors.

It was also in evidence, that the land in question had been for a series of years, more than twenty, in the exclusive possession and enclosure of the plaintiff, and of those under whom he claimed, there being a travelled way during all that time, too narrow however for con-

venience, in which teams were accustomed to pass, within the lines of the way as it purported to be laid out.

The Court charged the jury that the records of the proprietors of Pocasset were sufficient evidence of the laying out of the highway.

That the exclusive possession by the plaintiff and those under which he claimed of a possession of the way, gave him no right against the surveyor of highways or against the public, and that no length of possession would give title to individuals.

And it was left to the jury to determine whether or not the defendant, in committing the acts complained of, had confined himself to the limits of the highway, as laid out by the proprietors, or had gone upon the plaintiff's land without those limits.

The jury returned a verdict for the defendant.

The plaintiff moved for a new trial, and alledged as the grounds for granting the motion.

" The Court charged the jury that the records of the proprietors laying out the highway in April, 1700, was sufficient evidence of the laying out and establishing of a highway."

In the argument of the cause, SHEFFIELD of counsel for the plaintiff, contended, that inasmuch as the propriety of Pocasset was at the time of the laying out of the highways within the actual jurisdiction of Massachusetts, it was subject alone to the laws of that colony, and not to those of Rhode-Island.

That at the time of the lay out, there was no law of Massachusetts authorizing proprietors to lay out high-

ways; that within that colony the only modes of establishing highways were,

1. By act of the Legislature.
2. By dedication.
3. By use.

That there is no legislative act establishing this way, and that it cannot be claimed that the land in question ever became highway by user, there being no evidence that this portion of the alleged highway was ever travelled.

That the way, if established at all, must be by dedication. That it was not so established, because, although the laying out, as shown by the records of the proprietors, might be an act on their part, devoting the land to the uses of the public for a highway, there has been no acceptance by the public by use of that portion of the way in which the trespass is alleged to have been committed.

That the statute of Rhode-Island of 1715, could not operate upon the territory, until by the decree of the King in Council in 1746, it was restored to the rightful jurisdiction of this colony. That then its only operation must be as an acceptance by the public of such ways as had been already dedicated to the public use; that an acceptance in case of dedication, must be within a reasonable time; that the period from 1700 to 1746, is an unreasonable time.

BLAKE, of counsel for the defendant, contended, that the act of 1715, was operative within the territory from the time of its enactment; in point of law, the jurisdiction belonged rightfully to the colony, though there was no power to carry the law into execution until it was

restored to the colony in fact, and that by virtue of the statute, the way laid by the proprietors became a legal highway.

And if not, still it was a highway by dedication ; that by the laying out by their committee, they devoted the land to the public use as a highway.

It will be seen that the argument of the plaintiff's counsel proceeds upon the assumption, that the act of 1715 and the amendment of 1767, are to be regarded simply as an act on the part of the public accepting the highways laid out by the proprietors.

Looking at them in this light, it might seem a long period between the tender and the acceptance, but there can be no objection on that account. It cannot be material how long the acceptance is postponed, so long as the gift continues and the tender is not withdrawn by the owner of the fee before an actual acceptance.

But, again, the plaintiff contends that this was no acceptance of the way by the public by user, because the land in question was never used for travel. This assumes that it would be necessary to an acceptance of a way, devoted to public use, that its entire width should be travelled upon. But is this necessary ? There are few highways so used, and, if such were the rule, few ways could be accepted by use. The way is devoted as a whole. Is it not accepted as a whole, if at all ? The evidence shows that there has been a travelled path, showing an intention in the public to use what the proprietors had devoted to their use, and thereby their claim to use so much as their convenience or necessities might from time to time require. Such act might at least be sufficient, as against a mere wrong-doer.

In all cases of grants and conveyances of land, the re-

cords of the proprietors dividing and apportioning their lands among themselves, or granting them to third persons, have been received as conclusive evidence of such grant or alienations, and that even against the statute of frauds; and in *Adams vs. Frothingham*, (3 Mass. 360,) it is said " that almost all the titles from proprietors have nothing better to rest upon than a vote of the proprietors recorded in their books," (see also, 12 Mass. 416.) Now, it is not easy to see how full effect could be given to the divisions among themselves, as in the present case, without giving full effect also to the laying out their highways, which were matter of necessity in the division of extensive tracts, as very many of them were, into farm lands and village lots. Mere private ways could never answer their necessities, being, as many of these ways are, many miles in extent.

But if it were not so, still it may fairly fall within the provisions of our laws.

The first statute in relation to laying out highways in this State, was passed in May, 1715. By that act it was made the duty of proprietors to lay out within their respective proprieties all such highways as should be necessary, and that within three months ; and it was further provided, that in case of neglect or refusal, the Town Councils in the respective towns should order a jury to lay out such as might be necessary.

Upon an examination of this act, it will be seen that it proceeds upon an assumption of an *existing* power in the proprietors. It does not profess to confer any authority to lay out highways. The evil, which was to be remedied, was that they neglected to do it, to the injury of the public, who for want of such public ways, were put to great inconvenience. The public required

additional ways and more conveniently located to facilitate the intercourse, and to remedy this evil, the legislature thought it sufficient, instead of conferring any new power, simply to compel the exercise of an existing one, and, on failure, to confer a like power upon others, viz : upon the Town Councils.

This statute remained substantially the same, until the revision of 1767 ; the propriety of Pocasset being at this time and having been within the actual jurisdiction of this colony for twenty years. The act was then amended, the first section still making it the duty of proprietors to lay out highways, and to remove all doubt, if any there had been as to their power, provides, " That all highways duly laid out and recorded on their records, shall be as good, binding and valid, as though laid out in any other manner whatever."

And by the second section of the act, it is provided, " that if it shall be found necessary that other highways be laid out in any town besides such as have or shall be laid by the proprietor as aforesaid, in every such case it shall be lawful for the town council to order," &c.

The town of Tiverton, within which the propriety lies, was at this time, and had been since 1746, within the actual jurisdiction of the colony. It was, therefore, affected by the law as now amended, in the same way as all other proprieties within it.

And the question now raised is, whether within any propriety a way laid prior to 1715, and duly recorded in the records of such proprietors became a legal highway under the statute, whether the statute was so far retroactive.

The first section of the amended act enjoins the same duty upon the proprietors, without professing to

confer any new power. The additional provision of that section declares, " all ways laid out by them, and recorded, to be valid ways," without referring to the past or future, and leaving it in doubt, whether the legislature intended to ratify ways already laid, or those which should thereafter be laid. The reason for making that provision applies with equal force, at least, to the past as to the future.

But the intention of the Legislature is now clearly evinced by the provision of the second section—for by this the Town Councils are empowered to lay out other highways, if it be found that other highways are necessary, " *besides such* as have or may be laid out by the *proprietors* as aforesaid." In every such way and no other they may proceed.

From the passage of this last act then, the Town Council before exercising a jurisdiction in the matter, were to ascertain what highways had been laid out by the proprietors, as well prior to the passage of the act as subsequent thereto, for if these were sufficient, they would be exceeding their duty to lay out more.

It is clear, therefore, that the Legislature intended that all such highways as had been at any time prior to the passage of the act laid out and approved by the proprietors as highways, should be deemed and treated as legal highways and adopted as such, since it was the duty of the town councils to lay out such only as might be necessary besides these ; and this was the more necessary, for the greater part of the proprietors' highways had been laid prior to the first act of 1715, and unless the effect of the statute were to confirm the act of the proprietors, prior to the statute, the greater part would be unaffected by it.

Thomas Simmons *vs.* Walter Cornell.

The second cause assigned by the plaintiff for a new trial is, that the Court charged the jury that the right of way could not be lost by the public by *non user*, and that no adverse possession, however long, would give title to individuals against the public.

The plaintiff claims that this is erroneous, and having been in the uninterrupted possession of the land in question for more than twenty years, claims it in fee discharged of any easement or claim of right on the part of the public ; that the right of the public, if any existed, has been extinguished, or, at least, that it should have been left to the jury to determine, from the fact of exclusive possession and *non user* by the public, that that portion of the way had been abandoned by them, and has cited numerous authorities expressly to show that a grant may be presumed from length of possession, or the same extinguished in the same mode.

By referring to the facts, as they appeared at the trial, it will be seen that the *locus in quo* did not comprehend the entire way as laid out ; there was still a travelled path passing this enclosure, where the public were accustomed to travel. In fact, it was a case, in which the plaintiff had enclosed a portion of the highway only. By such enclosure he committed a public nuisance.

Of the general principles advanced by counsel there can be no doubt. Long possession under claim of right, is evidence of right, if not interrupted or disturbed, and twenty years possession is in general, deemed conclusive as between individuals.

But it is not so against the King or Sovereign, and, in this country, against the State. The same rules which apply to individuals, do not apply to the public or the State. The distinction is clearly laid down by Green-

leaf, in his work on evidence, section 45 ; " Lapse of time, though, it does not prevent a legal bar to the title of the Sovereign, agreeably to the maxim, *nullum tempus occurrit regi*, yet, if the adverse claim could have had a legal commencement, juries are directed to presume that it had. To this point is *Mayor of Kingston vs. Horner*, (Cowper, p. 102,) which was a claim of right to receive duties at the port of Hull, and which duties had been received under claim of right for three hundred and forty · years. Lord Mansfield held, that the jury might presume a grant from the King, and he put the case expressly upon this ground that the King might have rightfully granted, and, therefore, the receipt of the duties might have been rightful in the beginning.

The case before us is not such a case. It could not have had a rightful commencement. It began by a common and public nuisance, for which a man cannot prescribe. This point was determined in *Fowler vs. Sanders*, (3 Cro. 446.) In this case the defendant claimed by prescription a right to lay logs permanently in the highway adjoining his own land. The plea was demurred to and the demurrer sustained, and the Court say it was a public nuisance for which one cannot prescribe. The same doctrine is recognized in *James vs. Haywood*, (4 Cro. 184-5,) which was the erection of a gate across a public highway.

In the case in 7 Conn. 125, there was an obstruction of the way and *non user* of any portion of the way for ninety years—a state of facts entirely different from that before us. The charge of the Court is given in reference to the facts of the case then on trial, which was a case of an encroachment on a public highway, and without at present undertaking to determine what would be the

Thomas Simmons *vs.* Walter Cornell.

legal effect of an entire *non user* of the whole way and an exclusive possession by an individual, we may say that the case now referred to, has no application to the particular part of this case. And we feel bound to follow the decision in the cases referred to. (3 Cro. 446. ' 4 Cro. 184.)

The third point made by the plaintiff, that the verdict was against evidence, was not seriously pressed in the argument, and we think that the verdict was warranted by the evidence, in that it was in accordance with the evidence in the case and not even against the weight of the evidence.

New trial denied.